UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY LYNN SAVAGE,

                                  Case No. No.  13-12853

            Plaintiff,                 District Judge Denise Page Hood

v.                                    Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sherry Lynn Savage brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under Title II of the Social Security Act.  Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #13] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #9].

## I.   PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on September 13, 2010, alleging disability as of March 28, 2010 (Tr. 111).  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on October 6, 2011 in Flint, Michigan before

Administrative Law Judge ("ALJ") Regina Sobrino (Tr. 22). Plaintiff, represented by attorney Mikel Lupisella, testified, (Tr. 26-34), as did vocational expert ("VE") Stephanie A. Lorey (Tr. 34-42). On November 25, 2011, ALJ Sobrino found Plaintiff not disabled (Tr. 18).

On April 30, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-3). Plaintiff filed suit in this Court on July 1, 2013.

## II.  BACKGROUND FACTS

Plaintiff, born July 30, 1958, was 53 at the time of the administrative decision (Tr. 18, 111). She completed 12th grade and worked previously as a hi-lo driver and assembly line worker (Tr. 131-132). She alleges disability as a result of a right knee replacement (Tr. 131).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived with her husband, two sons, and one of her son's girlfriend (Tr. 26). She became disabled the same month she was laid off from her job as a machine operator (Tr. 27). She was unable to return to her former work due to knee swelling resulting in the inability to walk or sit in one position for more than half an hour (Tr. 27). She experienced problems crouching and climbing stairs but did not experience upper extremity limitations (Tr. 28). She was able to cook, clean, and do laundry, but shopped for groceries with the

help of her husband due to her inability to drive long distances (Tr. 29). She was able to perform personal care chores and mow the lawn with the use of a riding mower (Tr. 30). She typically performed household chores for 30 minutes, then sat down with her leg elevated to waist level (Tr. 34). She currently took Norco for knee pain (Tr. 30). She denied side effects from Norco (Tr. 33). She discontinued taking Celebrex because it did not relieve her pain (Tr. 32). Following the October, 2009 knee replacement procedure, she saw her surgeon for followup examinations (Tr. 32).

### B.  Medical Records

#### 1.  Treating Records

Following an April, 2009 injury to the knee, x-rays of the right knee showed suprapatellar effusion indicating the need for additional imaging studies (Tr. 190, 195). An MRI taken later the same month showed a tear of the medial meniscus and mild edema (Tr. 189). Orthopedic surgeon Michael W. Spagnuolo, D.O. recommended arthroscopic surgery (Tr. 186). Postoperative records from the following month state that Plaintiff was "getting better daily" (Tr. 185, 224-225). The following month, Dr. Spagnuolo recommended steroid injections, noting that Plaintiff would "likely need . . . knee replacement at some point in [the] future" (Tr. 184). The same month, he recommended the use of over-the-counter pain medication (Tr. 183). In July, 2009, Dr. Spagnuolo, noting a full range of knee motion, found that Plaintiff could return to work with restrictions (Tr. 182). In August, 2009, Dr. Spagnuolo denied Plaintiff's request for a "complete off work note," opining that she was

capable of doing "sit down work" (Tr. 180).  The same month, notes by orthopedic surgeon Richard Moyer, D.O. state that Plaintiff experienced continued right knee pain (Tr. 235).

In October, 2009, Plaintiff underwent a total right knee replacement  (Tr. 197, 204, 241-242).  She was discharged the following day in stable condition (Tr. 212).  The following week, Dr. Moyer prescribed Vicodin on a temporary basis (Tr. 236).  In December, 2009, Plaintiff requested a Vicodin refill, but was told to "taper back" to Tylenol 3 (Tr. 238). January, 2010 physical therapy notes state that Plaintiff demonstrated increased strength but continued "gait disturbance" (Tr. 228).  On January 29, 2010, Dr. Moyer found that Plaintiff could return to work without restrictions by February 1 (Tr. 245).  March, 2010 treating records show a good range of knee motion but bursitis (Tr. 239).  She was treated with Mobic and an arch support (Tr. 239).  July, 2010 records show a full range of motion and the absence of edema (Tr. 240).

In August, 2011, Baha D. Essak, M.D. began treatment of Plaintiff, noting her reports of knee pain and swelling (Tr. 256).  He observed that Plaintiff was not in acute distress but walked with a limp and exhibited tenderness and a reduced range of motion (Tr. 257).  The following month, Dr. Essak directed Plaintiff to continue the use of Norco for pain management (Tr. 255).  Dr. Essak's October, 2011 treating notes state almost identical findings to those made in the previous two months (Tr. 254).  The same month, he completed a Medical Source Statement, opining that Plaintiff be limited to less than 10 pounds lifting; standing/walking for less than two hours; and sitting for less than six hours (Tr. 264).  He

found that Plaintiff's ability to push or pull with the lower right extremity was severely limited (Tr. 264).

### 2. Non-Examining Evidence

In November, 2010, U. Gupta, M.D. performed a non-examining review of the medical records on behalf of the SSA, finding that Plaintiff was capable of lifting 20 pounds occasionally and 10 frequently; sitting, standing, or walking for six hours in an eight-hour workday; and unlimited pushing and pulling (Tr. 49). He found that Plaintiff was capable of climbing ramps and stairs, kneeling, and crawling on an occasional basis; balancing on a frequent basis; and a preclusion on all climbing of ladders, ropes, or scaffolds (Tr. 49). Dr. Gupta found the absence of additional limitations (Tr. 50).

### C. Vocational Testimony

VE Lorey classified Plaintiff's past work as a packer and machine operator as exertionally medium and unskilled; hi-lo driver, heavy/semiskilled; and janitor, light/ unskilled[1] (Tr. 35). The ALJ then posed the following set of limitations to the VE, describing

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

a hypothetical individual of Plaintiff's age, education, and work experience:

> [A]ssume a person who is limited to performing work that is light. . . .  In addition, assume a limitation to standing and walking no more than a maximum of two hours in an eight-hour workday.  And assume that the person should be able to alternate positions for up to five minutes approximately every thirty minutes.  The person should not have to climb ladders or stairs and should not have to kneel, crouch or crawl and only occasionally stoop.  Assume a person who should not be exposed to hazards or to vibration.  And should not have to use foot or leg controls (Tr. 36).

The VE found that the above limitations would preclude Plaintiff's past relevant work, but would allow the hypothetical individual to perform the light, unskilled work of a sorter (4,100 positions existing in the State of Michigan); packer (3,600); or information clerk (2,700) (Tr. 37).  The VE testified that if the same individual were additionally limited by the need to elevate one leg to waist level while working, all gainful employment would be precluded (Tr. 40).  The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 40).

### D.  The ALJ's Decision

Citing the medical records, ALJ Sobrino found that Plaintiff experienced the severe impairments of "degenerative joint disease and residuals of right total knee replacement" but that neither condition met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13).  The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [S]tanding/walking limited to a maximum of 2 hours per 8-hour workday; should have the opportunity to alternate position for up to 5 minutes approximately every 30 minutes; no climbing of ladders or stairs; occasional

-6-

stooping; no kneeling, crouching, or crawling; no exposure to hazards or vibration; and no operation of foot or leg controls (Tr. 14).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform her past relevant work, she could perform the exertionally light work of a sorter or packer (Tr. 17, 40).

The ALJ discounted the allegations of disability, noting that Dr. Essak's 2011 treating records did not support Plaintiff's allegations of knee swelling or effusion (Tr. 16). The ALJ observed that Plaintiff did not require the use of a cane or walker (Tr. 16). She determined that Dr. Essak's October, 2011 Medical Source Statement (indicating that Plaintiff was unable to perform even sedentary work) was unsupported by imaging studies or clinical findings (Tr. 16).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en

banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### The Credibility Determination

Plaintiff argues that the hypothetical question to the VE did not account for her full degree of impairment. *Plaintiff's Brief* at 7-11, *Docket #9.*   She contends that the omission of critical limitations from the hypothetical question invalidates the VE's job testimony forming the basis of the non-disability determination.  *Id.* at 8 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).[2]

Plaintiff does not identify any specific deficiencies in the hypothetical question. Instead, she argues that critical omissions in the hypothetical question stem from the ALJ's erroneous credibility determination.  She contends that her testimony that she was required to elevate her right leg to waist level on a regular basis ought to have been included in the

_____

[2]

Plaintiff's brief also includes a recitation of Sixth Circuit case law and the regulations pertaining to the deference accorded the opinion of a treating medical source.  *Plaintiff's Brief* at 8-9.  She is correct that the failure to provide a reasoned explanation for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS,* 710 F.3d 365, 376 (6th Cir.2013); *Wilson v. CSS,* 378 F.3d 541, 544-546 (6th Cir.2004)(citing § 404.1527(c)(2)).  Nonetheless, she has not identified an error in the ALJ's discussion and rejection of Dr. Essak's October, 2011 Medical Source Statement (Tr. 16).  She does not cite the medical transcript even once in her entire brief.    Further, upon independent review, I conclude that the ALJ's treating physician analysis was well reasoned and supported.  The ALJ correctly noted that Dr. Essak's opinion that Plaintiff was unable to perform even sedentary work was unsupported by either objective testing, clinical observations, or Plaintiff's activities (Tr. 16).

hypothetical question to the VE. *Plaintiff's Brief* at 10 (citing Tr. 34). She cites the VE's testimony that the need to elevate the leg to waist level would preclude all gainful employment (Tr. 40).

Plaintiff's argument that the hypothetical question did not account for professed degree of limitation hinges on the ALJ's credibility determination. Pursuant to SSR 96-7p, the credibility determination describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.* [3]

_____

[3]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

The ALJ's credibility determination, and by extension the choice of hypothetical limitations, is well articulated and well supported by the medical records.[4]   She noted that treatment records from the month preceding the March, 2010 alleged onset of disability showed good results from the October, 2009 knee replacement (Tr. 14).   She cited Dr. Moyer's December, 2009, post-surgery records showing a full range of knee motion and the absence of effusion or edema (Tr. 14-15).   She cited Dr. Moyer's finding that Plaintiff was able to return to work without restrictions as of February 1, 2010 as well as July, 2010 records showing a full range of motion and the absence of gait abnormalities (Tr. 15).   The ALJ observed that while January, 2011 treating records showed the presence of right knee effusion, Plaintiff received work restrictions (no prolonged sitting, standing, or walking) rather than a work release (Tr. 15).   The ALJ also noted that at the time the effusion was observed, Plaintiff was not taking medication (Tr. 15).   None of the records support Plaintiff's allegation that she was required to elevate her right leg to waist level on a regular basis.   Because the ALJ's rationale for the inclusion of certain limitations in the hypothetical question (and the omission of others) was well supported, she was not required to include the rejected claims in the question to the VE.   *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in  hypothetical to VE).

---

[4]

In contrast, while Plaintiff relies on her own testimony of disabling limitation, she does not cite any medical records to support the claims.

-11-

My independent review of the medical record also supports the ALJ's conclusion that Plaintiff was capable of exertionally light work.   Dr. Essak's finding that she was incapable of lifting even 10 pounds stands at odds with her denial of any upper extremity limitation (Tr. 28).   Likewise, she testified that her knee condition did not prevent her from performing personal care activities or a wide range of household and yard chores (Tr. 29).   While she alleges disability as of March, 2010,  she testified that she stopped working in March, 2010 when she was "laid off" (Tr. 26-27).   While she complained of ongoing knee pain, her allegations of pain and limitation following the October, 2009 surgery are unsupported by imaging studies.

 In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's physical conditions.   However, the ALJ's determination that she was capable of performing a significant range of light work was comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level.  As such, it should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

 I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of

-12-

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

> s/R. Steven Whalen
> R. STEVEN WHALEN
> UNITED STATES MAGISTRATE JUDGE

Dated: July 8, 2014

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 8, 2014, electronically and/or by U.S. mail.

> s/Carolyn M. Ciesla
> Case Manager to the
> Honorable R. Steven Whalen

-13-